UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO. 17-225 |
| RONALD THOMPSON | SECTION: "E" (2) |

## ORDER AND REASONS

On November 30, 2017, the grand jury charged Defendant Ronald Thompson, Jr. with three counts of possession with the intent to distribute cocaine, cocaine base, and heroin.[1] Before the Court is Defendant's motion for an evidentiary hearing pursuant to *Franks v. Delaware* to quash a search warrant issued on July 28, 2017.[2] The motion is opposed.[3] Defendant filed a reply memorandum.[4] For the reasons that follow, Defendant's motion is **DENIED**.

## FACTUAL BACKGROUND[5]

On July 28, 2017, members of the St. Charles Parish Sheriff's Office's Special Investigations Division conducted surveillance operations in the area of the Birdie's Food and Fuel Gas Station in Luling, Louisiana.[6] At approximately 4:15 p.m., Officer Jason Tiliakos observed a black Infiniti pull into the parking lot of the convenience store.[7] After a short time, Detective Tiliakos observed a black male, later identified as Emanuel Harris,

---

[1] R. Doc. 1. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (2012).
[2] R. Doc. 30. *See Franks v. Delaware*, 438 U.S. 154 (1978).
[3] R. Doc. 32.
[4] R. Doc. 28.
[5] The following facts are taken from the Incident Report written by Officer Daniel April of the St. Charles Parish Sheriff's Office, R. Doc. 18-1, and the affidavit of Officer April in support of his application for a warrant to search Thompson's person, R. Doc. 30-4. Defendant does not dispute the facts as described by the Government.
[6] R. Doc. 18-1 at 8.
[7] R. Doc. 18-1 at 8.

1

ride his bicycle up to the Infiniti, put his head through the driver's side window, and appear to converse with the vehicle's occupant.[8] Shortly thereafter, a second man approached the Infiniti and entered the vehicle through the passenger side door.[9] Detective Tiliakos stated that the second man exited the car seconds later, got into a maroon-colored sport-utility vehicle, and left the area.[10] Emanuel Harris also soon departed, riding his bicycle north on Louisiana Highway 52.[11] Detective Tiliakos relayed his observations to Detective Daniel April and Sergeant Brad Walsh of the St. Charles Parish Sheriff's Office as the black Infiniti exited the parking lot.[12]

April and Walsh followed the black Infiniti traveling south on Highway 52, and then onto Old Spanish Trail.[13] The incident report states, "[a]s investigators followed the Infiniti, they observed the vehicle cross the center line of the roadway, which was a two way road, on several occasions."[14] After observing the traffic violation, Detective April and Sergeant Walsh activated their emergency lights and stopped the Infiniti.[15]

The traffic stop began at 4:59 p.m.[16] Detective April approached the driver's side of the vehicle, and the driver identified himself as Ronald Thompson.[17] Sergeant Walsh approached the passenger's side, and made contact with the passenger, Darryl Bourgeois.[18] Detective April informed Defendant of the traffic violation and asked for Defendant's driver's license and vehicle registration.[19] As Detective April spoke with

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *See* Call for Service Report, R. Doc 18-2.
[17] R. Doc. 18-1 at 9.
[18] *Id.*
[19] *Id.*

2

Defendant, April observed that Defendant was "sweating heavily about the forehead" and "his body was visibly shaking while he produced his driver's license."[20] Defendant also "stuttered while attempting to answer, clearing his throat several times."[21] When Detective April asked where he was driving, Defendant "stated he was just driving around with no known destination."[22]

Based on the information collected through the surveillance at the gas station and Defendant's nervous behavior during the stop, April and Walsh suspected Defendant was involved in drug activity, and requested assistance from a canine unit.[23] The investigators asked Defendant to exit the vehicle, and, because of his history of resisting officers in the past, he was placed in handcuffs.[24]

Eighteen minutes after Defendant was pulled over, Deputy Deroche arrived with the canine.[25] The canine responded positively to an open-air sniff outside the car.[26] The canine then searched the interior of the vehicle, and alerted positively to the center console and the driver's seat, where Defendant had been sitting.[27] Based on the canine search, the officers conducted a warrantless search of the vehicle, finding a wallet with $1,870 in cash and a social security card bearing Defendant's name in the glove box, as well as brass knuckles in the center console.[28]

At that point, the officers placed Defendant in the back seat of the patrol unit.[29] A few minutes later, officers removed Defendant from the patrol car, read him his *Miranda*

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] R. Doc. 18-1 at 9.
[24] R. Doc. 18-1 at 9.
[25] *See* R. Doc. 18-2.
[26] R. Doc. 18-1 at 9. Exterior Video at 10:18.
[27] R. Doc. 18-1 at 9. Exterior Video at 13:21.
[28] *Id.*
[29] *Id.*

rights, and asked for consent to search his person.[30] Defendant initially consented to the search, but then revoked his consent.[31] The officers then placed Defendant back into the patrol vehicle while they secured a warrant to search his person.[32] Video from the interior of the vehicle shows that after he was returned to the patrol car, Defendant reached his handcuffed right hand into his pants, and then moved his hand, balled into a fist, into the seatback behind him.[33] The video does not show what was in Defendant's fist.

While April and Walsh were conducting the traffic stop of Thompson and Bourgeois, Lieutenant Shuff and Detective Tennison made contact with Emanuel Harris. Harris confessed that he had attempted to purchase crack cocaine from Defendant, but was unable to do so. Mr. Harris admitted that, although he did not acquire drugs, he witnessed Defendant sell drugs to the second unknown man in the gas station parking lot. According to the incident report, Mr. Harris stated "Thompson removed a clear plastic bag from his underpants [containing] numerous other clear plastic bags of drugs, which he provided to the [buyer]."[34] The officers who interviewed Mr. Harris conveyed this information to the investigators who were with Defendant and Bourgeois.[35]

Detective April requested a warrant to search the Defendant's person from the Honorable Timothy Marcel, a judge in the 29th Judicial District of Louisiana, Parish of St. Charles. Detective April in his affidavit asserts that probable cause to search the Defendant was established by: (1) the surveillance of the black Infiniti at the Birdie's Food and Fuel, (2) Defendant's nervous responses during the traffic stop, and (3) the

---

[30] R. Doc. 18-1 at 9; Interior Video at 29:27; Exterior Video at 29:27.
[31] R. Doc. 18-1 at 10.
[32] Interior Video at 33:00.
[33] Interior Video at 33:30.
[34] R. Doc. 18-1 at 10.
[35] *See* R. Doc. 18, Exhibit C ("Exterior Video"). Detective April and Sergeant Walsh were not informed of Mr. Harris' admissions until after the canine sniff and search of Defendant's car.

information provided by Emanuel Harris.[36] Judge Marcel determined that, based on the facts in the affidavit, probable cause existed to search Defendant's person, and he issued the warrant.[37]

After receiving the warrant to search Defendant, the officers removed him from the police car, and Detective Tennison searched the back seat of that vehicle.[38] Tennison found a bag of drugs containing roughly 28 grams of cocaine, rock-like substances that tested positive for cocaine, 34 tablets that tested positive for ecstasy, and nine bundles that tested positive for about 2 grams of heroin.[39] Defendant was then placed under arrest.[40] During a search of Defendant's person pursuant to the search warrant, $400 was found in his pants pocket.[41]

On November 30, 2017, the grand jury returned a three-count indictment alleging Defendant (1) possessed with the intent to distribute a quantity of cocaine, (2) possessed with the intent to distribute a quantity of cocaine base, and (3) possessed with the intent to distribute a quantity of heroin, all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).[42]

In this motion, Defendant seeks to exclude the government's evidence obtained as a result of the search of Defendant's person by quashing the search warrant issued by Judge Marcel.[43] Defendant argues (1) that Detective April misrepresented the amount of time Defendant was detained prior to the arrival of the canine unit; (2) the affidavit

---

[36] R. Doc. 30-4 at 1-2.
[37] R. Doc. 30-4 at 4.
[38] Interior Video at 1:26:50.
[39] R. Doc. 18-1 at 10-11.
[40] *Id.* at 11.
[41] *Id.* at 10.
[42] R. Doc. 1.
[43] R. Doc. 30.

omitted that the information regarding Emanuel Harris was not relayed to Detective April until sixteen minutes into the traffic stop; (3) the affidavit omitted the fact that Darryl Bourgeois was a passenger in Defendant's car, and no drugs were found during a search of Bourgeois' person; and (4) the affidavit omitted the fact that Defendant was handcuffed shortly after the traffic stop began.[44]

## **LEGAL STANDARD**

In *Franks v. Delaware*,[45] the Supreme Court held that criminal defendants have a limited right under the Fourth and Fourteenth Amendments to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant.[46] The *Franks* rule is of "limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded."[47] Under *Franks*, "[t]here is … a presumption of validity with respect to the affidavit supporting the search warrant."[48] As a result, in order to receive an evidentiary hearing on suppression, a defendant who attacks the validity of an affidavit supporting a search warrant must make a "substantial preliminary showing" that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit, and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause.[49]

The Supreme Court clarified what it meant by a "substantial preliminary showing:"

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless

---

[44] *See* R. Doc. 14.
[45] 438 U.S. 154, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978).
[46] *Franks*, 438 U.S. at 155-56.
[47] *Id.* at 167.
[48] *Id.* at 171.
[49] *Id.* at 171; *see also United States v. Dickey*, 102 F.3d 157, 161-62 (5th Cir. 1996).

6

> disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits of sworn or otherwise reliable statements should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.[50]

The "substantial preliminary showing" requirement is not lightly met.[51] Furthermore, even if the defendant makes the requisite substantial preliminary showing for an evidentiary hearing, suppression still is not mandated unless the defendant establishes at the hearing, by a preponderance of evidence, that the misstatements in question were made intentionally or with reckless disregard for the truth and that, with the false statement omitted, probable cause was lacking.[52]

The *Franks* rule applies to alleged omissions in a supporting affidavit, as well as to false statements.[53] Courts have noted, however, that affidavits containing omissions of potentially exculpatory information are less likely to present a question of impermissible official conduct than those that affirmatively include false information.[54] To be entitled to an evidentiary hearing in a case involving an omission, a defendant must make a substantial preliminary showing that (1) the affiant made the omission intentionally and/or with reckless disregard for the omission's tendency to mislead, and (2) there would not have been probable cause if the affiant had included the omitted material in

---

[50] *Id.* at 171-72.
[51] *See United States v. Cleveland*, 964 F. Supp. 1073, 1077 (E.D. La. 1997).
[52] *Franks*, 438 U.S. at 156.
[53] *See United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995).
[54] *See Cleveland*, 964 F. Supp. at 1077.

the supporting affidavit.[55] "Unless the defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate, the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity."[56] Significantly, "[a]llegations of negligence or innocent mistake are insufficient."[57]

The Fifth Circuit has acknowledged that "it will often be difficult for an accused to prove that an omission was made intentionally or with reckless disregard rather than negligently unless he has somehow gained independent evidence that the affiant had acted from bad motive or recklessly in conducting his investigation and making the affidavit."[58] For this reason, the Fifth Circuit recognizes that "when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself."[59] Thus, under Fifth Circuit law, the Court may infer recklessness if the materiality of the omission is sufficiently great. In such cases, the analytical concepts of materiality and recklessness are "bound together," collapsing the dual inquiry of *Franks* into a single inquiry of materiality.[60] The Court will infer reckless intent only in extreme cases when the materiality of the omitted material is "clearly critical" to the probable cause determination.[61]

---

[55] *Id.* at 1077-78.
[56] *Tomblin*, 46 F.3d at 1377 (quoting *United States v. Colkley*, 899 F.2d 297, 303 (4th Cir. 1990)).
[57] *United States v. Ludwig*, 902 F. Supp. 121, 125 (W.D. Tex. 1995).
[58] *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)
[59] *Id.* (emphasis added). *See also United States v. Cronan*, 937 F.2d 163, 165 (5th Cir. 1991); *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990) (same); *United States v. Namer*, 680 F.2d 1088, 1094 (5th Cir. 1982).
[60] *Namer*, 680 F.2d at 1094.
[61] *Cleveland*, 964 F. Supp. at 1078.

## ANALYSIS

## I.

As a preliminary matter, Defendant misunderstands the remedy available to him through this motion. Defendant asks the Court to rule "that the search warrant in this case should be quashed and all evidence in this case should be suppressed."[62] However, the government's primary pieces of physical evidence against Defendant were not obtained pursuant to the disputed search warrant. Accordingly, a motion to quash the search warrant, even if granted, would not result in the exclusion of all evidence.

First, the government found $1,870 in cash and brass knuckles in the search of Defendant's vehicle after the canine positively alerted to the vehicle. In its Order and Reasons denying Defendant's Motion to Suppress, the Court found that Detective April had reasonable suspicion of drug activity to prolong the initial investigatory stop in order to request assistance from the canine unit.[63] After the canine positively alerted to the exterior of the vehicle, and again to the interior console and glove box, the officers had probable cause to search the interior of the vehicle. In the Fifth Circuit, it is well established that "an alert by a drug-detecting dog provides probable cause to search [a vehicle]."[64] Because the search of Defendant's vehicle was justified by probable cause, the evidence discovered in the search is admissible at trial.

Second, the search of the police vehicle, in which Officer Tennison found cocaine, cocaine base, and heroin, does not implicate Defendant's Fourth Amendment rights. Even though the search warrant was issued prior to this search, the warrant only covered

---

[62] R. Doc. 30-3 at 6.
[63] R. Doc. 38. *See Rodriguez v. United States*, 135 S. Ct. 1609 (2015).
[64] *United States v. Thompson*, 540 Fed. Appx. 445 (5th Cir. 2013) (quoting *United States v. Rodriguez*, 702 F.3d 206, 210 (5th Cir. 2012).

9

searches of Defendant's *person.* Defendant has no reasonable expectation of privacy in a police vehicle in which he is detained, and therefore has no standing to challenge the search made in the vehicle after he exited from it.[65]

Accordingly, Defendant may not challenge the admissibility of the money and the brass knuckles found in Defendant's vehicle, or the drugs found in the police vehicle, by moving to quash the search warrant at issue in this case.

## II.

Although Defendant is not entitled to the full remedy he requests, he may seek to exclude the $400 in cash found during the search of his person pursuant to the search warrant.

Defendant makes the following assertions: (1) the affidavit misrepresents that the canine unit arrived "minutes after" the traffic stop began, when in actuality the canine unit did not arrive for eighteen minutes after the beginning of the stop; (2) the affidavit omitted that the information regarding Emanuel Harris was not relayed to Detective April until sixteen minutes into the traffic stop; (3) the affidavit omitted the fact that Darryl Bourgeois was a passenger in Defendant's car, and no drugs were found during a search of Bourgeois; and (4) the affidavit omits the information that Defendant was handcuffed shortly after the traffic stop began. [66]

---

[65] *United States v. Maryland*, 479 F.2d 566 (5th Cir. 1973) (lawfully detained person had no reasonable expectation of privacy in police vehicle in which he had been taken to station and in which he had voluntarily abandoned counterfeit bills, by hiding them in the vehicle, and thus he had no standing to challenge the search in which the bills were found).
[66] See R. Doc. 14.

10

A. Misrepresentation

Defendant first alleges Detective April misrepresented the amount of time Defendant was detained prior to the arrival of the canine unit. The affidavit states, in relevant part, "[D]ue to Thompson's behavior and investigator[s'] observation at the gas station, investigators requested the assistance of K9. Minutes later K9 arrived and was briefed on the incident."[67] Defendant argues that although the affidavit states the canine unit arrived "minutes after" the traffic stop began, the unit did not actually arrive until eighteen minutes after the beginning of the stop.

To be entitled to a *Franks* hearing, Defendant must make a substantial preliminary showing that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit, and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause. The Defendant fails to satisfy either prong.

First, it is not clear this is a material misrepresentation. The affidavit states that the canine unit arrived "minutes" after Detective April requested assistance. Assuming the initial questioning of Defendant during the traffic stop took five minutes,[68] and the canine unit arrived eighteen minutes after the beginning of the stop,[69] then it took the canine unit thirteen minutes to arrive after Detective April's request. The Court is not convinced that thirteen minutes is too long a period to be described as "minutes later."

Second, even assuming that the affidavit mispresents the truth, Defendant has offered no evidence to show that Detective April knowingly and intentionally made the inaccurate statement. The Supreme Court has made clear that a defendant seeking a

---

[67] R. Doc. 30-4 at 2.
[68] *See* R. Doc. 18-1 at 9.
[69] *See* R. Doc. 18-2.

11

*Franks* hearing must provide "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Allegations of negligence or innocent mistake are insufficient."[70] In this case, Defendant has not alleged any facts to show that Detective April acted with deliberate falsehood or reckless disregard for the truth, and attached no offer of proof.[71] Instead, Defendant has offered only conclusory recitations of the legal standard.

Third, even if this sentence were removed from the affidavit, the remainder would be sufficient to support a finding of probable cause. After striking the offending sentence, the affidavit still retains all of the substantive assertions made by Detective April, including the surveillance of the Defendant participating in suspicious activity in the parking lot of the gas station, the nervousness of the Defendant during the traffic stop, and Emanuel Harris' statement in which he described seeing Defendant selling drugs in the parking lot and storing the drugs in his pants. The Court finds that the affidavit establishes probable cause even after the alleged misrepresentation is stricken.

B.  <u>Omissions</u>

Defendant also argues (1) the affidavit omitted to mention that the information regarding Emanuel Harris was not relayed to Detective April until sixteen minutes into the traffic stop; (2) the affidavit omitted the fact that Darryl Bourgeois was a passenger in Defendant's car, and no drugs were found during a search of Bourgeois; and (3) the affidavit omitted the information that Defendant was handcuffed shortly after the traffic stop began. [72]

---

[70] *Franks*, 438 U.S. at 171-72.
[71] *See United States v. Thomas*, 627 F.3d 146, 159 (5th Cir. 2010) (finding that the defendant was not entitled to a Franks hearing when he did not prove that the inaccuracies in the affidavit were intentional).
[72] *See* R. Doc. 14.

As stated above, to receive an evidentiary hearing in a case involving an omission, a defendant must make a substantial preliminary showing that (1) the affiant made the omission intentionally and/or with reckless disregard for the omission's tendency to mislead, and (2) there would not have been probable cause if the affiant had included the omitted material in the supporting affidavit.[73]

The Court finds the omissions alleged by Defendant are insufficient to make a "substantial preliminary showing" under *Franks*. First, Defendant fails to allege any facts to show that Detective April, or any other officer, acted intentionally or with reckless disregard for any omission's tendency to mislead, and makes no offer of proof. Defendant offers only conclusory statements that "the egregious nature of law enforcement tactics . . . shock the conscience."[74] Nor has Defendant shown that the omitted material is "clearly critical" to the finding of probable cause. Even if the affidavit included the alleged omissions, probable cause still would exist.[75]

The alleged sixteen-minute delay between the stop and the receipt of the information from Emanuel Harris is irrelevant to whether probable cause existed to search the Defendant. Defendant contends, "no reasonable magistrate would have issued a search warrant if the untimely *Rodriguez* violations (i.e., Defendant being detained for sixteen minutes prior to . . . receiving information about Defendant's alleged drug dealing and eighteen minutes prior to . . . a drug sniff of Defendant's vehicle) had been enunciated in said affidavit."[76] However, as explained the Court's Order and Reasons denying

---

[73] *Id.* at 1077-78.
[74] R. Doc. 36 at 1.
[75] *See United States v. Tomblin,* 46 F.3d 1369, 1377 (5th Cir. 1995) ("omitted information that is potentially relevant but not dispositive is not enough to warrant a *Franks* hearing") (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990).
[76] R. Doc. 30 at 5.

13

Defendant's motion to suppress, there are no *Rodriguez* violations in this case.[77] The continued detention of the Defendant while the detectives waited for the canine unit was constitutionally sound; the length of the investigation is of no consequence in determining whether probable cause existed to search Defendant. Even if the sixteen-minute delay for the admissions from Emanuel Harris had been included in the affidavit, the affidavit would still present facts sufficient to establish probable cause.

Further, Defendant argues that the affidavit omitted the fact that Darryl Bourgeois was a passenger in the car, and no drugs were found on his person. Even if this information had been included in the affidavit, however, probable cause still would exist. The affidavit states that Emanuel Harris admitted he attempted to purchase narcotics "from Thompson," and that the unknown male who entered the front passenger's side "bartered a deal with Thompson."[78] Harris also stated that Defendant, and not Bourgeois, was in possession of the drugs (Defendant "retrieved the narcotics from inside Thompson's under pants near his testicle area").[79] Accordingly, even if the affidavit included a statement that Bourgeois was searched, and that no drugs were found, the affidavit still would establish probable cause to search the Defendant's person.

Finally, Defendant argues that the affidavit is defective because it omits to include that he was handcuffed during the traffic stop.[80] Defendant does not offer an explanation of how this omission would have negated probable cause, and the Court fails to see how the inclusion of this information is "clearly critical" to the determination of whether probable cause existed to search him.

---

[77] R. Doc. 38.
[78] R. Doc. 39-1 at 2.
[79] *Id.*
[80] R. Doc. 30-3.

The Court finds that Defendant has not made the "substantial preliminary showing" required for a *Franks* hearing, and the request is denied.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Defendant's motion is **DENIED**.[81]

**New Orleans, Louisiana, this 15th day of March, 2018.**

                          _____
                          **SUSIE MORGAN**
               **UNITED STATES DISTRICT JUDGE**

---

[81] R. Doc. 67.